UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEFFREY NICHOLS<br><br>Plaintiff,<br><br>v.<br><br>WADE A. WALLACE<br><br>Defendant. | CASE NO. 3:22-CV-703-SJF |

**OPINION and ORDER**

Before the Court is Plaintiff Jeffrey Nichols' Motion to Alter or Amend Judgment filed on February 12, 2025. For the reasons stated below, Plaintiff's motion is denied.

**I.   BACKGROUND**

On January 13, 2021, Plaintiff was driving westbound on Interstate 94 near mile marker 43 in Michigan City, Indiana. [DE 16 at 1, ¶ 1]. Officer Wade Wallace, on duty for the LaPorte County Sheriff's Interdiction Traffic Enforcement Unit, was parked in the median of the interstate in his marked police vehicle. [*Id.*] Officer Wallace began to follow Plaintiff after observing that (1) Plaintiff appeared to be traveling at a speed greater than the speed limit of 70 miles per hour and (2) Plaintiff merged "quickly" from the far inside lane to the center lane "without signaling 300 feet prior to changing lanes." [*Id.* at 1, ¶ 1–2]. After making these observations, Officer Wallace paced his vehicle with Plaintiff's, and his "speedometer and [dash-mounted] radar" reflected a speed of 77 miles per hour. [*Id.* ¶ 3]. Officer Wallace again observed "Plaintiff merge to

the far outside lane of travel" without signaling for 300 feet. [*Id.* at 2, ¶ 4]. Thus, Officer Wallace pulled Plaintiff over. [*Id.* ¶ 5].

Plaintiff disputes that he was speeding or that he made unsafe lane changes. Plaintiff maintains that his cruise control was "set at 70 miles per hour." [DE 17-1 at 2, ¶ 6]. As to the lane changes, Plaintiff insists that he used his turn signals for both lane changes and that he waited at least 4 seconds before changing lanes. [*Id.* at 3, ¶ 2]. Plaintiff thus maintains that he drove at least 410 feet before changing lanes. [*Id.* at 3, ¶ 2]. Plaintiff states that he asked Officer Wallace to provide a recording showing that Plaintiff was speeding and making improper lane changes, but Officer Wallace declined to do so. [*Id.* at 4, ¶ 3]. Officer Wallace ultimately issued Plaintiff a warning for speeding and failing to properly use turn signals. [DE 16 at 2, ¶ 11]. With only a warning issued, Plaintiff did not pay any fees. [*Id.*].

Plaintiff filed this case on August 29, 2022. Plaintiff brought claims against Officer Wallace under 42 U.S.C. §§ 1981 and 1983, contending that Officer Wallace's actions during the traffic stop were racially motivated, violating Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution. Officer Wallace moved for summary judgment on all of Plaintiff's claims, which the Court granted in an opinion and order entered on January 24, 2025. [DE 23]. The Court found that Officer Wallace was entitled to summary judgment on Plaintiff's Fourth Amendment claim because he had reasonable suspicion when he pulled over Plaintiff; that Officer Wallace was entitled to immunity on Plaintiff's 5th Amendment claim based on Plaintiff's apparent concession on that claim; and that Officer Wallace was entitled to summary

judgment and qualified immunity on Plaintiff's 14th Amendment claim because Officer Wallace showed that the traffic stop was reasonable and because Plaintiff presented no evidence of discrimination beyond his pleadings. Unsatisfied, Plaintiff moved to alter the Court's judgment, arguing that the Court, in granting summary judgment to Officer Wallace, made a credibility determination by accepting Officer Wallace's version of events over Plaintiff's.

Through this motion, Plaintiff raises new arguments, restates old ones, and fails to present any new evidence. As a result, Plaintiff's motion must be denied. The Court issues the following opinion and order based on the parties' consent under 28 U.S.C. § 636(c). [DE 9, DE 21].

**II.   STANDARD**

Within 28 days of the entry of judgment, a party may file a motion under Fed. R. Civ. P. 59(e) to alter, amend, or vacate the judgment. *See* Fed. R. Civ. P. 59(e); *Foman v. Davis*, 371 U.S. 178, 181 (1962). The rule "gives a district court the chance to rectify its own mistakes in the period immediately following its decision." *Banister v. Davis*, 590 U.S. 504, 508 (2020) (quotation omitted). But a district court's "opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 932 (7th Cir. 2018) (citation omitted). Accordingly, relief under Fed. R. Civ. P. 59(e) is an extraordinary remedy reserved for the exceptional case. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).

"Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington*

*v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). To prevail, the movant must clearly establish one of these grounds for relief. *Id.* Reconsideration may only address "matters properly encompassed in a decision on the merits." *White v. N.H. Dep't of Emp. Sec.*, 455 U.S. 445, 451 (1982). Thus, the motion must be "tightly tied to the underlying judgment." *Banister*, 590 U.S. at 508. In other words, Fed. R. Civ. P. 59 is not meant to be "a vehicle for a party to undo its own procedural failures . . . [or to] introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Cincinnati Life Ins. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quotation omitted).

### III. DISCUSSION

Plaintiff contends that the Court's order granting summary judgment must be amended because the Court improperly accepted Officer Wallace's version of events over Plaintiff's. First, Plaintiff reasserts his argument that his use of cruise control creates a genuine dispute of material fact precluding summary judgment, specifically contesting three cases referenced by the Court in its opinion. Plaintiff also challenges Officer Wallace's evidence, contending—for the first time in the instant motion—that Officer Wallace failed to present evidence on the integrity of the dash mounted radar involved. Finally, Plaintiff also reasserts his argument that he used his indicator lights properly to contend that he presented a genuine dispute of material fact.

Plaintiff does not present any newly discovered evidence through these arguments. Thus, the Court considers only whether any of Plaintiff's arguments clearly

establish that the Court made a manifest error of law or fact in its previous order. The Court addresses each argument in turn.

## 1. Evidence Regarding Officer Wallace's Dash Mounted Radar

The Court takes Plaintiff's second argument first. As stated, Plaintiff alleges, for the first time in the instant motion, that summary judgment was improper because Officer Wallace failed to provide "details about the tuning, testing, accuracy or reliability of the radar unit" or regarding the radar's ability to preserve readings. [DE 26 at 2]. But neither Plaintiff nor Defendant raised this issue at summary judgment, and it is improper to do so now. *See Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1336 (7th Cir. 1992). Indeed, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Havoco*, 971 F.2d at 1336 (explaining that a motion to alter judgment "cannot be used to raise new arguments which could and should have been raised before judgment was entered.").

Even if the Court could consider this argument, it is unavailing. The determinative question at summary judgment was whether Defendant had reasonable suspicion to believe that a traffic violation had been made, a standard lower than probable cause. [*See* DE 23 at 11, citing *United States v. Lewis*, 920 F.3d 483, 489 (7th Cir. 2019) ("Whether the driver actually committed a traffic infraction is irrelevant for [Fourth] Amendment purposes so long as there was an objective basis for a reasonable

belief he did.")]. A dash-mounted radar indicating a speed above the speed limit gives rise to reasonable suspicion that a traffic violation has been committed. [*See* DE 23 at 12, citing *United States v. Baker*, 78 F.3d 1241, 1244 (7th Cir. 1996)]. Officer Wallace used the dash-mounted radar after he also independently observed Plaintiff both traveling above the speed limit and using his indicator light incorrectly. Thus, Plaintiff's assertions about the efficacy of Defendant's dash-mounted radar do not clearly establish a manifest error of law or fact. *Harrington*, 433 F.3d at 546.

### 2. Use of Cruise Control

As stated, "[w]hether the driver actually committed a traffic infraction is irrelevant for [Fourth] Amendment purposes so long as there was an objective basis for a reasonable belief he did." *Lewis*, 920 F.3d at 489. Plaintiff next asserts that his use of cruise control created a genuine dispute of material fact as to whether there was an objective basis for Defendant's reasonable belief that Plaintiff had committed a traffic violation. Plaintiff contests the Court's reference to these three cases: *Retzlaff v. City of Cumberland*, No. 09-CV-692-SLC, 2010 WL 1780338, at *6 (W.D. Wis. May 3, 2010); *Fells v. Adams*, No. 11 C 47, 2012 WL 2872118, at *3 (N.D. Ill. July 11, 2012); and *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009).

First, Plaintiff contests the Court's reliance on *Retzlaff v. City of Cumberland* contending that cruise control was not at issue in that case. [DE 26 at 4]. It is true that *Retzlaff* did not discuss a plaintiff's allegations of cruise control and instead discussed only evidence about the officer defendant's "visual estimation" and radar reading of the plaintiff's speed. 2010 WL 1780338, at *2. But the Court's reference to *Retzlaff* supports

the Court's analysis and does not amount to "a manifest error of law or fact." *Harrington*, 433 F.3d at 546. In *Retzlaff,* the court observed that "a police officer's good faith, reasonable estimate of . . . speed of a vehicle, can provide a lawful basis for a traffic stop even if the officer eventually turns out to be wrong and the driver stopped was actually operating within the law." *Id.* at *11. The court also explained that "a motorist's claim that he did not actually violate a traffic regulation cannot establish that the officer who stopped him lacked probable cause." *Id.* at *5. In support, the court in *Retzlaff* cited *Deville,* explaining that the *Deville* court had found that a driver's testimony that "she was certain that she was not speeding because she had been using her vehicle's cruise control function at the time of the stop" is normally insufficient defeat summary judgment. *Id.* at *6.

    Thus, to survive summary judgment, the court in *Retzlaff* explained that "a motorist must go further and demonstrate that the officer's belief that a violation occurred not only was incorrect, but objectively unreasonable." *Id.* For instance, the court explained that summary judgment could be defeated upon a showing of "evidence that would allow a jury to infer that the police officer was lying about his visual estimation or radar reading" again referencing *Deville. Id.* Plaintiff presented no evidence from which to infer that Defendant was lying or to show that Defendant's belief was otherwise objectively unreasonable. Without more, the Court cannot find that Plaintiff shows that the Court's reference to *Retzlaff* clearly establishes a manifest error of law or fact. *Harrington*, 433 F.3d at 546.

Despite contesting the Court's reference to *Retzlaff* and *Deville*, Plaintiff contends that the Court should have followed *Deville*'s treatment of the defendant officer's testimony which resulted in reversal of the trial court's grant of summary judgment. In *Deville*, the police officer refused to show the driver his radar gun when asked to do so because he failed to "lock-in" the speed he claimed the driver had been traveling—and despite testimony in the record that the radar could do so. *Deville*, 567 F.3d at 166. In addition, in *Deville*, "the driver also…produced evidence of the defendant police officer's history of problematic arrests, falsified charges, citizen complaints and that multiple supervisors had requested his resignation." *Retzlaff*, 2010 WL 1780338, at *6 (citing *Deville*, 567 F.3d at 165–66). Based on this evidence, the Court found that there was a genuine dispute of material fact. But here, there is such testimony or evidence in the record. Without more, the Court cannot find a manifest error of law or fact.

Finally, Plaintiff attacks the Court's use of *Fells v. Adams*, which the Court cited as part of its determination that a driver's assertion that cruise control is not, alone, enough to create a dispute of fact as to whether an office had an objective basis for a reasonable belief that a traffic violation had been committed. [*See* DE 23 at 12]. Plaintiff disputes the Court's reference to *Fells* because, there, cruise control was collaterally estopped from being relitigated. Though the issue was collaterally estopped there, the Court cannot find that its citation to *Fells* was a manifest error of law or fact. In *Fells*, the plaintiff disputed the propriety of his traffic stop by contending that he was using cruise control set at or below the speed limit. As the Court observed, an Illinois state court had addressed this issue as part of the plaintiff's criminal proceedings and found

that the officer had probable cause to initiate a traffic stop. *Id.* at *3. With the issue already decided in state court, the Court found that it was collaterally estopped from deciding it again, explaining that not only was Plaintiff "attempt[ing] to relitigate the same issue—that [the Officer Defendant] lacked probable cause to initiate a traffic stop—he raise[d] the same arguments that he raised before the state court." *Id.* The Court's opinion merely referenced the plaintiff's arguments and the ruling in its decision—along with numerous other cases. [*See* DE 23 at 10-13]. Without more, the Court cannot find that Plaintiff has clearly established that the Court's reference to *Fells* was a manifest error.

### 3. Consideration of Turn Signal Evidence

Plaintiff next argues that the Court should not have granted summary judgment to Defendant because Defendant did not allege that Plaintiff "total[ly] fail[ed]" to use his turn signal. [DE 23 at 6]. Plaintiff also contends that the Court decided which conflicting version of events was correct rather than construing the facts in his favor.

But these arguments again ignore the determinative inquiry on summary judgment. As this Court explained in its opinion and order granting summary judgment, even if Plaintiff's claim that he used his turn signal properly was true, "all it would establish is that [p]laintiff complied with the turn signal statute at the time, which is not the key inquiry...[T]he key inquiry is whether there was an objective basis for [the officer's] reasonable belief." [*Id.* at 14 (citing *Abbas v. City of Hobart, Ind.*, No. 2:21-CV-150-GSL-APR, 2024 WL 3508640, at *3 (N.D. Ind. July 22, 2024); *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019)].

Plaintiff also cites to *Payne v. Pauley*, 337 F3d 767, 770 (7th Cir. 2003) and *Huff v. Reichert*, 744 F.3d 999 (7th Cir. 2014), to support his argument. But these fail to clearly establish a manifest error of law or fact. At the outset, Plaintiff failed to discuss, or even cite, either case at summary judgment. *Cincinnati Life Ins.*, 722 F.3d at 954 (explaining that Rule 59 is not "a vehicle for a party to . . . advance arguments that could and should have been presented to the district court prior to the judgment.") Even considering these cases, however, they are unpersuasive. At the outset, the court notes that *Payne* does not involve a traffic stop and is otherwise factually inapposite. Beyond a mere citation, Plaintiff made no other substantive arguments on the application of *Payne*, so the Court will not consider it further. *See United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also Am. Nat'l Bank & Tr. Co. of Chi. v. Alps Elec. Co., Ltd.,* No. 99 C 6990, 2002 WL 484849, at *2 (N.D. Ill. Mar. 29, 2002) ("[T]he court is not required to scour the record to unearth material factual disputes or evidentiary support for a party's position.")

On reply, Plaintiff quotes the following portion of the Court's decision in *Huff* to support his argument that the Court made a manifest error when granting summary judgment:

> Thus, in order to stop the plaintiffs, Reichert [the officer] must have had a reasonable articulable suspicion that they had committed, were committing, or were about to commit an offense. See [United States v.] .Riley, [*sic*] 493 F.3d at 808[.] Changing lanes without signaling violates Illinois state traffic laws. *See* 625 ILCS 5/11–709(a); 625 ILCS 5/11–804. But the district court found that there is "a genuine issue of material fact as to whether Reichert actually perceived a traffic violation." [] If Reichert did

> not witness a traffic violation, then he lacked a reasonable basis to pull plaintiffs over; they were simply driving with out-of-state license plates on a particular stretch of highway where Reichert says that much drug trafficking occurs.

[DE 28 at 3 (citing *Huff*, 744 F.3d at 1004 (7th Cir. 2014)]. Based on this, Plaintiff contends that the "clash between [his] and [the] officer's evidence [] warrants the denial of summary judgment." [DE 38 at 3].

At the outset, Plaintiff's reliance to *Huff* on this issue is unhelpful because the court did not decide any factual issues. The Court explained that "[i]n an interlocutory appeal from the district court's denial of qualified immunity at summary judgment, [it] ha[s] jurisdiction to consider 'only the purely legal question of whether, for purposes of [the defendant's] qualified immunity defense,' the facts asserted by the plaintiffs make out a violation of clearly established law." *Huff*, 744 F.3d at 1004 (citing *Jewett v. Anders*, 521 F.3d 818, 819 (7th Cir. 2008)). Thus, the court of appeals accepted "the plaintiffs' (or the district court's) version of the facts and ask[ed] whether the defendant [was] nevertheless entitled to qualified immunity." *Huff*, 744 F.3d at 1004 (citing *Jewett*, 521 F.3d at 819). Even considering the facts from the district court, however, the case is also distinguishable. In *Huff*, the defendant officer pulled over the two plaintiffs—the driver and a passenger—as they drove on the Illinois interstate. *Id.* at 1002. The defendant officer stated that he observed the plaintiffs' car crossing "the white divider line without signaling." *Id.* After sixteen minutes, he gave [the driver] a written warning but continued to detain the pair." *Id.* After some further conversation between the parties, the following events occurred:

> [Officer] Reichert said that he was concerned about [the passenger's] demeanor and wanted to walk his drug-sniffing dog around the car. [The driver] responded "that's fine," but then said, "[y]ou pulled me over for swerving, and I know I did not swerve." He also said that he believed he was being "profiled" by Reichert. [The driver] then asked Reichert if he was free to go. Reichert responded, "not in the car."

*Id.*. After the dog alerted, the officer told plaintiffs he would search the car, to which plaintiffs consented. *Id.* The defendant officer then informed the driver that there were loose marijuana leaves that needed to be cleaned out of his car, but he did not document the presence of drugs or collect any evidence. *Id.* Finally, "[a]bout fifty minutes after the initial stop, and thirty-four minutes after giving [the driver] a warning ticket, [the officer] told the plaintiffs that they were free to leave." *Id.*

The driver and passenger then sued the officer claiming that he violated their 4th Amendment rights. *Id.* The defendant moved for summary judgment alleging qualified immunity, which the district court denied. *Huff v. City of Collinsville*, No. 12-596-MJR, 2013 WL 12097572 (S.D. Ill. Mar. 14, 2013), *aff'd sub nom. Huff v. Reichert*, 744 F.3d 999 (7th Cir. 2014). The district court found a dispute of fact based on the plaintiff's statements that he never crossed the center line, which were supported by video evidence, deposition testimony, and an affidavit. 2013 WL 12097572, at *3. Here, however, Plaintiff did not offer the same volume of evidence to dispute whether Officer Wallace had "an objective basis for [his] reasonable belief" that Plaintiff failed to timely signal his lane changes. *Abbas,* 2024 WL 3508640, at *3. Moreover, even if Plaintiff had, Officer Wallace pulled Plaintiff over based on two perceived two traffic violations: Plaintiff's failure to timely signal and Plaintiff's speeding. Without more, the Court

cannot find that this clearly establishes a manifest error of fact or law warranting an amended judgment.

## IV. CONCLUSION

In sum, Plaintiff has not raised any newly discovered evidence and has not established a manifest error of law or fact. As explained in the Court's original order granting summary judgment, Plaintiff's allegations and evidence are insufficient to create a genuine dispute of material fact as to the absence of reasonable suspicion for the traffic stop, and summary judgment was appropriate. Accordingly, Plaintiff's Motion to Alter Judgment is **DENIED** [DE 25], and the Court's prior order granting Defendant's Summary Judgment is **AFFIRMED**.

**SO ORDERED** this 26th day of June, 2025.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge